**In re Richard H. LAIBSTAIN,
Respondent.**

and

**In re Joel Steinberg, Respondent.**

**A Member of the Bar of the District
of Columbia Court of Appeals.**

**No. 02–BG–86.**

District of Columbia Court of Appeals.

Argued Jan. 20, 2004.
Decided Feb. 12, 2004.

John T. Rooney, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Before SCHWELB and GLICKMAN, Associate Judges, and KERN, Senior Judge.

PER CURIAM:

"What's in a name?"[1] In these two consolidated cases, the Board on Professional Responsibility and Bar Counsel ask us to clarify the requirement embodied in D.C. Bar R. XI, § 11(f)(2), that reciprocal attorney discipline shall be "identical" to the discipline imposed by the foreign jurisdiction unless certain conditions are met. We hold that the substance of the reciprocal discipline is more important for purposes of § 11(f)(2) than the name attached to it and that for good cause we may impose functionally equivalent discipline under a name different from that used in

the foreign jurisdiction. Applying that holding in the present cases, we reciprocally *disbar* two attorneys because their licenses to practice law in Virginia were *revoked* for misappropriation of client funds and other ethical violations. Revocation is not a sanction available in the District of Columbia in original discipline cases, disbarment in the District of Columbia is equivalent in all but name to revocation in Virginia, and use of the term "disbarment" in lieu of "revocation" will avoid the unnecessary and potentially misleading proliferation of different names for the same sanctions in reciprocal discipline cases.

I.

### A. Richard H. Laibstain

Respondent Richard H. Laibstain was admitted to the District of Columbia Bar in 1984. Laibstain also was a member of the Bar of the Supreme Court of Virginia until the Virginia State Bar Disciplinary Board revoked his license effective November 16, 2001, after he admitted a number of ethical violations. These violations included Laibstain's repeated, intentional misappropriation of client funds.

Bar Counsel reported the license revocation in Virginia to this court. We temporarily suspended Laibstain from the practice of law pursuant to D.C. Bar R. XI, § 11(d), issued him a show cause order, and directed the Board on Professional Responsibility to recommend whether to impose identical, greater or lesser reciprocal discipline or to proceed *de novo*. Laibstain did not respond to the show cause order or participate in the Board proceeding that ensued.[2] Bar Counsel

---

1. William Shakespeare, *Romeo and Juliet,* Act II, Sc. 2.

2. *See In re Smith,* 812 A.2d 931, 932 (D.C. 2002) (holding that where a respondent fails to update his address with the D.C. Bar as

asked the Board to impose disbarment as "functionally equivalent" reciprocal discipline. The Board issued its report on October 31, 2002. Deeming "identical" reciprocal discipline mandated by D.C. Bar R. XI, § 11(f)(2), and opinions of this court, the Board recommended that Laibstain's license to practice law in the District of Columbia be revoked, subject to the right to apply for reinstatement in five years. This recommendation was a qualified one, however. The Board stated that if it "were writing on a blank slate, [it] would prefer to recommend the 'functionally equivalent' District of Columbia sanction [of disbarment], thereby avoiding unnecessary expansion of the kinds of different sanctions imposed in our reciprocal discipline cases."

Excepting to the Board's recommendation, Bar Counsel asks us to disbar Laibstain.

### B. Joel Steinberg

Respondent Joel Steinberg has been a member of the District Columbia Bar since 1976. He was a member of the Virginia Bar too until the State Bar Disciplinary Board accepted the resignation he tendered while several serious ethics charges were pending against him and revoked his license on November 30, 2001. Under Virginia law then in effect, the charges against Steinberg, which included misappropriation of client trust funds, were deemed admitted. *See* Va. Sup.Ct. R. Pt. 6, § IV, ¶ 13(I) (2000) (amended Sept. 18, 2002);[3] *see also In re Sheridan*, 680 A.2d

439, 440 (D.C.1996) ("We have treated resignation while under investigation for misconduct as a basis for imposing reciprocal discipline in the District of Columbia.").

As in the case of Laibstain, this court suspended Steinberg in the wake of the revocation of his license to practice law in Virginia and directed him to show cause before the Board on Professional Responsibility. Like Laibstain, Steinberg failed to participate in the proceedings that followed.[4] Bar Counsel urged the Board to recommend disbarment as functionally equivalent reciprocal discipline, but the Board adhered to the views it expressed in Laibstain's case and recommended revocation, again with the caveat that it would prefer disbarment if that were permitted.

Bar Counsel takes exception to the Board's recommendation and asks us to disbar Steinberg.

### II.

■ D.C. Bar R. XI, § 11, addresses the imposition of reciprocal discipline in the District of Columbia when a member of our Bar has been disciplined for committing professional misconduct in another jurisdiction. In pertinent part, Rule XI, § 11(f)(2), states that this court "shall impose the *identical* discipline unless the attorney demonstrates, or the Court finds on the face of the record on which the discipline is predicated, by clear and convincing evidence," that one or more of five excep-

---

required by D.C. Bar R. II, § 2(1), and fails to report his discipline to Bar Counsel as required by D.C. Bar R. XI, § 11(b), the respondent shall be deemed to have had sufficient notice for purposes of the imposition of reciprocal discipline).

3. Since Steinberg's resignation, the Virginia Rules have been amended to prohibit resignation in the face of pending disciplinary

charges. Under the current rule, an attorney who seeks to consent to revocation of his license is required to file an affidavit that corresponds to the affidavit of consent to disbarment under D.C. Bar R. XI, § 12. *See* Va. Sup.Ct. R. Pt. 6, § IV, ¶ 13(L).

4. See footnote 2, *supra*.

tions set forth in § 11(c) apply.[5] The Rule "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992).

This rebuttable presumption operates, we have held, even when the disciplinary sanction in question "would not otherwise be available in the District of Columbia." *In re Garner*, 636 A.2d 418, 420 (D.C. 1994); *see also In re Zdravkovich*, 831 A.2d 964, 970 (D.C.2003) ("[W]e are not aware of any provision prohibiting such discipline and indeed, more recently, we have demonstrated a willingness, in certain situations, to apply the foreign discipline in haec verba.").[6] For example, revocation of the license to practice law is not one of the permissible sanctions listed in D.C. Bar R. XI, § 3(a). Nonetheless, we have held that "[f]or a respondent whose law license has been revoked in Virginia, the identical discipline in this jurisdiction can be revocation, with leave to reapply either after reinstatement in Virginia or after the expiration of five years." *In re Webb*, 766 A.2d 564, 565 (D.C.2001).[7] "By adopting the terminology and form of discipline imposed by our sister jurisdiction, without significant difference in practical effect upon the disciplined attorney, [the court is] cogni-zant of the desirability of avoiding 'inconsistent disposition[s] involving identical conduct by the same attorney.'" *In re Coury*, 526 A.2d 25 (D.C.1987) (quoting *In re Velasquez*, 507 A.2d 145, 147 (D.C. 1986)).

On the other hand, while we have held in *Coury* and other cases that it may be permissible to adopt the "terminology" as well as the substance of the otherwise unavailable foreign sanction when imposing "identical" reciprocal discipline, we have not construed Rule XI, § 11(f)(2), to require terminological as well as substantial identity in all cases to which that provision applies. On the contrary, we have deemed it compatible with § 11(f)(2) to impose essentially the same discipline under a different label where it would be useful to do so. In a number of cases, for example, this court has imposed a public *censure* as the "functionally equivalent" reciprocal discipline where the court in another jurisdiction had imposed a public *reprimand*. *See, e.g., In re Bell*, 716 A.2d 205, 206 (D.C.1998); *In re Dreier*, 651 A.2d 312, 313 (D.C.1994). Similarly, on at least one occasion this court has—without comment—treated a suspension as equivalent to a revocation in another jurisdiction. *See In re Dean*, 704 A.2d 302, 303 (D.C.

---

**5.** R. XI, § 11(c), provides that reciprocal discipline shall be imposed unless it is shown by clear and convincing evidence that

    (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

    (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

    (3) The imposition of the same discipline by the Court would result in grave injustice; or

    (4) The misconduct established warrants substantially different discipline in the District of Columbia; or

    (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

**6.** D.C. Bar R. XI, § 3(a), lists the different types of sanctions, from probation to disbarment, that "may be imposed on an attorney for a disciplinary violation."

**7.** *Accord, In re Powell*, 686 A.2d 247, 248 (D.C.1996); *In re Sheridan*, 680 A.2d at 440; *In re Otchere*, 677 A.2d 1040, 1041 (D.C. 1996); *In re Diday*, 631 A.2d 901 (D.C.1993); *In re Moorcones*, 619 A.2d 983 (D.C.1993).

1998). We also have imposed suspension or disbarment as the "virtually identical" equivalent of another jurisdiction's disciplinary resignation. *In re Brown,* 797 A.2d 1232 (D.C.2002) (suspension); *see also In re Hest,* 825 A.2d 301, 302 (D.C. 2003) (disbarment).

■ We will not impose otherwise permissible identical reciprocal discipline if "[t]he misconduct established warrants substantially different discipline in the District of Columbia." D.C. Bar R. XI, § 11(c)(4). In the District of Columbia, the discipline that normally is warranted for intentional misappropriation is disbarment. *See In re Anderson,* 778 A.2d 330, 335 (D.C.2001); *In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc). Prior to July 1, 2000, revocation under Virginia law was substantially different from disbarment under our Rule. An attorney whose license to practice was revoked in Virginia could apply for reinstatement at any time upon submission of proof of fitness. *See* (former) Va. Sup.Ct. Pt. 6, § IV, ¶ 13(J) (1999). In contrast, in the District of Columbia, "[a] disbarred attorney not otherwise ineligible for reinstatement may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment." D.C. Bar R. XI, § 16(a). We therefore have declined to impose revocation as the reciprocal sanc-

tion for intentional misappropriation when revocation was imposed under the previous Virginia rules. *See In re Brickle,* 521 A.2d 271, 273 (D.C.1987).[8]

Effective July 1, 2000, the Virginia rules were amended to provide that an attorney whose license has been revoked may not petition for reinstatement for five years. *See* Va. Sup.Ct. R. Pt. 6, § IV, ¶ 13(I)(7)(b)(1) (2002). Revocation under Virginia law is no longer substantially different from disbarment; rather, as Bar Counsel contends and the Board does not dispute, disbarment is now functionally equivalent to revocation. It *is* revocation in all but name.[9] The Virginia rules themselves use the terms "revocation" and "disbarment" interchangeably.[10]

■ On the understanding that Laibstain and Steinberg are subject to the five-year waiting period for seeking reinstatement because their revocations were imposed as of November 2001, it would be permissible for us to follow the Board's recommendation and impose revocation as identical reciprocal discipline (none of the five exceptions in D.C. Bar R. XI, § 11(c), having been shown to be applicable). But since disbarment would be identical in all but name, and since—it bears remembering—revocation is not an otherwise available sanction under our Rule, it also would

8. *Accord, In re Richards,* 764 A.2d 254, 255 (D.C.2000); *see also In re Ladas,* 798 A.2d 1067 (D.C.2002) (declining to impose suspension as reciprocal sanction for intentional misappropriation).

9. *Compare* Va. Sup.Ct. R. Pt. 6, § IV, ¶ 13(I)(2)(f)(2)(e) (revocation is most serious sanction available and the only sanction that prohibits practice for five or more years); *id.* Pt. 6, § IV, ¶ 13(I)(7)(b)(1) ("no petition [for reinstatement] may be filed sooner than five years from the effective date of the Revocation"); *id.* Pt. 6, § IV, ¶ 13(I)(7)(b)(2) (specific fitness and rehabilitation requirements for reinstatement after revocation), *with* D.C. Bar

R. XI, § 3(a) (disbarment is most serious sanction available and the only sanction that prohibits practice for five or more years); *id.* XI, § 16(a) ("A disbarred attorney not otherwise ineligible for reinstatement may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment."); *id.* XI, § 16(d), (f) (specific fitness and rehabilitation requirements for reinstatement after disbarment).

10. *See, e.g.,* Va. Sup.Ct. R. Pt. 6, § IV, ¶ 13(A)("'Disbarment' has the same meaning as Revocation."); *id.* Pt. 6, § IV, ¶ 13(M).

be permissible to do as Bar Counsel urges and the Board would prefer and impose disbarment.[11]

■ Although all agree that the difference is only semantic, we are persuaded that we should opt for disbarment. "In determining whether a recommended sanction is appropriate, we must consider the purpose served by Bar discipline, which we have described as being 'to protect the public, the courts and the legal profession.'" *In re Berger*, 737 A.2d 1033, 1042 (D.C.1999) (quoting *In re Haupt*, 422 A.2d 768, 771 (D.C.1980)). Bar Counsel argues that the recognized term "disbarment" is more familiar and meaningful to the public, the courts, and the profession in the District of Columbia than the term "revocation," which is not defined in our Rule and which may well have different— and in the present context, misleading— connotations. This is particularly true given that numerous past decisions of this court have treated revocation as a lesser sanction than disbarment, a sanction appropriate for less serious misconduct. The Board too favors the "familiar terminology of disbarment" where the term is functionally equivalent to revocation in order to limit the "unnecessary expansion of the kinds of different sanctions imposed in our reciprocal discipline cases." We see no substantial countervailing considerations.

Accordingly, we ORDER that respondents Richard H. Laibstain and Joel Steinberg each be disbarred from the practice of law in the District of Columbia, effective in each case from the date on which the respondent files the affidavit required by D.C. Bar R. XI, § 14(g). We direct respondents' attention to the requirements

of D.C. Bar R. XI, §§ 14(g) and (h) and 16, and their effect on respondents' eligibility for reinstatement.

---

11. Because of the specific constraints imposed by D.C. Bar R. XI, § 11, "[w]e give less deference to Board recommendations in reciprocal discipline cases than in original proceedings." *In re Berger*, 737 A.2d 1033, 1040 (D.C.1999). *See In re Zelloe*, 686 A.2d 1034, 1036 (D.C.1996). Here, of course, the Board itself encourages us not to follow its formal recommendation of revocation if we construe § 11(f)(2) to afford leeway.