3/19/2026 3:10:13 PM

# In the Iowa Supreme Court

---

No. 25–1787

Submitted February 19, 2026—Filed March 20, 2026

---

**Iowa Supreme Court Attorney Disciplinary Board,**

Complainant,

vs.

**Stephen K. Allison,**

Respondent.

---

On review of the report of the Iowa Supreme Court Grievance Commission.

The grievance commission recommends a public reprimand for violation of ethical rules. **Attorney Reprimanded.**

May, J., delivered the opinion of the court, in which all justices joined. McDonald, J., filed a concurring opinion.

Tara van Brederode, Sarah C. Tupper, and Robert A. Howard III, Des Moines, for complainant.

Jesse Macro, Jr. of Macro Law, LLP, Des Moines, for respondent.

**May, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) charged Stephen Allison with violating three Iowa Rules of Professional Conduct. The charges all arise from Allison's repeated refusals to comply with this court's orders to file a jurisdictional statement during a criminal appeal. Ultimately, these refusals led to the dismissal of the appeal. As will be explained, though, Allison did not abandon his client. Instead, Allison helped his client resolve the underlying criminal charge through a separate plea deal.

After a hearing, the Iowa Supreme Court Grievance Commission (commission) found that Allison had committed the charged violations. As a sanction, the commission recommends a public reprimand.

Following our de novo review, we agree that the Board proved the charged violations. We also agree that the proper sanction is a public reprimand.

**I. Background.**

Allison has held a license to practice law in Iowa since 2017. This matter arises from Allison's representation of Mark Derrick Easton in a criminal appeal in 2023.

Before Allison was involved, Easton pleaded guilty to one count of indecent exposure in violation of Iowa Code section 709.9(2)(*a*) (2022). The district court sentenced Easton on December 9, 2022. Later, the district court was advised that the sentence should have included a ten-year special sentence as required by Iowa Code section 903B.2. On February 1, 2023, the court set aside the judgment and set dates for a pretrial conference and jury trial. The same day, Easton's prior counsel (not Allison) filed a motion to withdraw.

Meanwhile, during January and February, Easton made various pro se filings in our court. In an order dated February 27, we noted that one of Easton's

pro se filings "could be read as" a notice of appeal from the district court's February 1 order. We remanded the matter "for a period of 14 days for the district court to rule on [Easton's prior counsel's] . . . motion to withdraw, and to appoint new counsel as necessary."

The next day, the district court removed Easton's prior counsel and appointed Allison to represent Easton. As the commission describes, "This appointment led to Allison being listed as counsel for the appellate case, despite the fact that Allison was not on the court-appointed list for appellate matters and did not practice appellate law."

On April 14, our court issued an order acknowledging Allison's appointment as counsel for Easton's attempted appeal. We also noted possible jurisdictional problems with that attempted appeal. So we directed Allison to "file a statement regarding whether the court may exercise jurisdiction over appellant's February 1, 2023 filing" within twenty days. This meant that Allison had until May 4 to file a jurisdictional statement.

But Allison did not file a jurisdictional statement by May 4. Nor did Allison file a motion to withdraw from the appeal.

On May 12, we issued another order. We noted that on May 9, the district court had allowed Allison to withdraw from the case underlying the appeal. We also noted, however, that the district court's order "did not remove Mr. Allison as counsel for [Easton] in th[e] appeal." We also directed Allison to file a jurisdictional statement "[w]ithin 20 days of the date of th[e] order." This gave Allison until June 1 to file a jurisdictional statement.

But Allison did not file a jurisdictional statement by June 1. Nor did Allison file a motion to withdraw from the appeal.

On June 22, we issued yet another order. We noted Allison's failure to file a jurisdictional statement as instructed in the April 14 and May 12 orders. Because of those failures, we assessed a $150 penalty against Allison. And we again ordered Allison to file a jurisdictional statement within twenty days, i.e., by July 12. We also warned Allison that failure "to comply with this order may result in dismissal of this appeal."

On July 7, Allison paid the $150 penalty. Yet Allison did not file a jurisdictional statement. Nor did Allison move to withdraw from the appeal.

Meanwhile, though, Allison was assisting Easton in a separate criminal case in the district court. With Allison's help, Easton entered a plea deal in that case. That deal led to the dismissal of the indecent exposure charge underlying Easton's attempted appeal. The dismissal was entered on July 12. But even then, neither Easton nor Allison dismissed the appeal. Nor did Allison file a jurisdictional statement or motion to withdraw in our court.

On August 3, the appellate clerk entered a notice of default to Allison based on his failure to file a jurisdictional statement. The notice warned that if Allison did not remedy this default within an additional fifteen days, the appeal would be dismissed. The notice also assessed an additional $150 penalty against Allison and warned that it must be paid "within fifteen days." The notice closed with this warning:

> You are advised that if the appeal is dismissed as a result of counsel's failure to comply with this default notice, a copy of the dismissal order will be forwarded to the Iowa Supreme Court Attorney Disciplinary Board and to the State Public Defender's Office, where applicable. The dismissal may serve as grounds for an investigation of neglect of a client's legal matter.

(Emphasis omitted.)

Even then, Allison did not comply. The fifteen-day deadline came and went. Allison still did not file a jurisdictional statement. Nor did Allison file a motion to withdraw from the appeal.

On September 6, about two weeks after that deadline passed, we entered an order dismissing the appeal for want of prosecution. We noted that Allison had still not filed the jurisdictional statement or paid the second $150 penalty. We also directed the clerk to certify copies of the appellate docket to the Board.

A week later, on September 11, Allison paid the second $150 penalty.

On September 25—more than two weeks after the appeal was dismissed—Allison filed a document entitled "Statement From Attorney Ordered to File Statement." Allison noted that he did not have a contract with the state public defender to handle appellate criminal matters. As for the jurisdictional question, Allison said that he declined to "speculate as to whether this Court has jurisdiction on this appeal."

We took no action on this statement. Procedendo issued on October 9.

**II. Disciplinary Proceedings.**

The Board investigated the matters just described. Following that investigation, the Board filed a complaint charging Allison with violating Iowa Rules of Professional Conduct 32:1.3, 32:3.2, and 32:8.4(d). The Board recommended public reprimand as the appropriate sanction.

Allison's answer admitted most of the Board's factual allegations. But he denied that the court "ordered [him] to represent Mr. Easton on [appellate] matters as a court appointed attorney." Allison also denied that he violated any rules.

The commission conducted a hearing in July 2025. Allison was the only witness.

Following the hearing and the filing of posthearing briefs, the commission issued its written findings of fact, conclusions of law, and recommended sanction. The commission concluded that Allison violated rules 32:1.3, 32:3.2, and 32:8.4(d) by "deliberately ma[king] the decision" not to file the jurisdictional statement "even though he was on notice of the three orders directing him to do so." As a sanction, the commission recommended a public reprimand.

Allison did not appeal. However, both Allison and the Board filed statements with our court regarding the appropriate sanction.

### III. Standard of Review.

Although Allison did not appeal, it is our practice to review the record de novo and verify that the Board proved the violations charged. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Leitner*, 998 N.W.2d 627, 633 (Iowa 2023). If we conclude the Board has proven violations, we then consider the appropriate sanction. In all of this, we give respectful consideration to the commission's findings and recommendations, but we are not bound by them. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Anderson*, 21 N.W.3d 145, 148 (Iowa 2025).

### IV. Violations.

As explained, the Board alleged—and the commission found—that Allison violated three of our ethical rules: rules 32:1.3, which requires lawyers to "act with reasonable diligence and promptness in representing a client"; 32:3.2, which requires lawyers to "make reasonable efforts to expedite litigation consistent with the interests of the client"; and 32:8.4(d), which prohibits lawyers from "engag[ing] in conduct that is prejudicial to the administration of justice." Iowa Rs. of Prof'l Conduct 32:1.3, 32:3.2, 32:8.4(d). These alleged violations arise from Allison's deliberate failure to comply with our court's orders to make certain filings by certain deadlines, all leading to the administrative dismissal of a

client's criminal appeal. Following our de novo review, we agree with the commission that this conduct by Allison violated rules 32:1.3, 32:3.2, and 32:8.4(d). *See Anderson*, 21 N.W.3d at 148 (finding a violation of rules 32:1.3, 32:3.2, and 32:8.4(d) through the failure to meet appellate filing deadlines resulting in default notices); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Lipski*, 14 N.W.3d 751, 757 (Iowa 2024) (finding a violation of rule 32:1.3 based on the failure to comply with appellate deadlines); *Leitner*, 998 N.W.2d at 639 ("We have consistently held an attorney violates rule 32:8.4(d) when the 'misconduct . . . causes court proceedings to be . . . dismissed.' " (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson*, 988 N.W.2d 399, 413 (Iowa 2023))); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Bergmann*, 938 N.W.2d 16, 20, 22 (Iowa 2020) (observing that the "[f]ailure to meet appellate deadlines and the triggering of default notices can violate rule 32:3.2" even if the attorney "erroneously believed that his court-appointed duties had ended"). Thus we proceed to consider the proper sanction.

**V. Sanctions.**

Sanctions for attorney misconduct should advance "our goals of protecting 'society from those unfit to practice law, . . . uphold[ing] public confidence in the justice system,' deterring future misconduct, and 'maintain[ing] . . . the reputation of the bar as a whole.' " *Leitner*, 998 N.W.2d at 646 (alterations and omissions in original) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008) (per curiam)). "There is no standard sanction for a particular type of misconduct"; rather, we "determine an appropriate sanction based on the particular circumstances of each case." *Anderson*, 21 N.W.3d at 148 (first quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Neff*, 5 N.W.3d 296, 314 (Iowa 2024); and then quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Earley*, 729

N.W.2d 437, 443 (Iowa 2007)). Even so, we "seek a degree of consistency in our disciplinary cases with respect to sanctions." *Id.* (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 268 (Iowa 2012)). So our analysis typically centers on three issues: (1) "our history of sanctioning similar misconduct," (2) "any special mitigating factors that apply to the particular case," and (3) "any special aggravating factors." *Leitner*, 998 N.W.2d at 646.

**A. History of Sanctioning Similar Misconduct.** As explained, Allison violated rules 32:1.3, 32:3.2, and 32:8.4(d) when he deliberately declined to comply with our orders requiring him to file a jurisdictional statement and thereby allowed Easton's appeal to be administratively dismissed. "Sanctions for conduct of this nature range from a public reprimand when the attorney's misconduct is relatively isolated, to suspensions of several months when the conduct is egregious or accompanied by related misrepresentations, additional violations, or other aggravating circumstances." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 639–40 (Iowa 2015) (collecting cases). Allison's violations line up most closely with those in *Iowa Supreme Court Attorney Disciplinary Board v. Wright*, 758 N.W.2d 227, 228 (Iowa 2008), and *Iowa Supreme Court Attorney Disciplinary Board v. Weiland*, 862 N.W.2d at 641. In each of those cases, an attorney "failed to comply with appellate deadlines in a single client matter and failed to dismiss his client's appeal, instead allowing it to be administratively dismissed." *Weiland*, 862 N.W.2d at 641 (discussing *Wright*). Based on this conduct, we publicly reprimanded the attorneys in each case. *Weiland*, 862 N.W.2d at 643; *Wright*, 758 N.W.2d at 232.

**B. Potential Mitigating Factors.** We next consider whether there are mitigating factors. We believe there are several. Allison's acceptance of court appointments for indigent criminal defendants is mitigating. *Iowa Sup. Ct. Att'y*

*Disciplinary Bd. v. Hier*, 937 N.W.2d 309, 318 (Iowa 2020). Allison's acceptance of appointments for an underserved population is especially mitigating. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 194 (Iowa 2015). Allison's regular engagement in other community service is mitigating. *Lipski*, 14 N.W.3d at 760. Allison's lack of prior discipline is mitigating. *Leitner*, 998 N.W.2d at 647. Allison's limited experience with appellate practice is mitigating. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 155 (Iowa 2018) ("Even before we adopted the rules of professional conduct, we considered inexperience to be a mitigating factor.").

We also adopt the commission's finding that although Allison failed to pursue Easton's interests in the appeal, he did not abandon Easton and, indeed, he helped Easton obtain a positive outcome in the underlying criminal matter. This lack of client harm is mitigating. *Weiland*, 862 N.W.2d at 642.

But we look somewhat less favorably on some of Allison's other proposed mitigating factors. In his statement regarding sanctions, Allison claims that he has made "the ultimate acceptance of responsibility" by making changes to the way he monitors the court's electronic document management system (EDMS), thereby "acknowledging the way he was doing things was problematic" and also "show[ing] a new pattern of conduct to help prevent the errors from happening in the future." And so, Allison suggests, the commission and the Board were wrong to suggest that he failed to take responsibility.

We see things differently. For one thing, the record doesn't support Allison's suggestion that "contrary to the panel and Board's positions," he has consistently taken responsibility for his misconduct. Both in his correspondence with the Board and in his testimony before the commission, Allison made it clear

that he did not view his actions as misconduct at all. He also focused blame on others, including the district court and the appellate clerk.

To be clear, we do not suggest that it was wrong for Allison to defend himself in disciplinary proceedings. He was certainly free to do so. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Tindal*, 949 N.W.2d 637, 645 (Iowa 2020). Rather, our point is simply that—contrary to his current claims—Allison has not always taken responsibility for his misconduct.

Nor do we think Allison is taking responsibility for his misconduct now. Although Allison says he has changed how he monitors EDMS, that doesn't really address his *actual* violations. Allison's violations here are not like those of an attorney who *accidentally* overlooked some deadlines because he didn't spend enough time on EDMS. Rather, Allison's violations arise from *deliberate* choices. The record supports, and we adopt, the commission's unchallenged finding that Allsion "deliberately made the decision to eschew filing the jurisdictional statement" in Easton's appeal "even though he was on notice of the three orders" from our court "directing him to do so." This deliberate defiance is not mitigated by changes to Allison's EDMS monitoring process.

Similarly, although we acknowledge that Allison encountered other suboptimal circumstances during his representation of Easton—such as the fact that Easton was a difficult client and the fact that Allison was appointed even though he had not been contracted to do appellate work—we do not view those circumstances as especially mitigating. None of those circumstances gave Allsion license to ignore our orders. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Eichmann,* 18 N.W.3d 460, 475 (Iowa 2025) ("A difficult client does not excuse an attorney from complying with our rules of professional conduct."). Rather, it was Allison's

duty to comply with those orders or—at the very least—to ask leave to withdraw as counsel. Allison did neither.

**C. Potential Aggravating Factors.** We next consider whether the record shows any aggravating factors. The Board points to two candidates: Allison's prior private admonition and his lack of remorse in this matter.

"Although a private admonition is not discipline, we can consider it an aggravating factor because it puts the attorney on notice of his or her ethical requirements." *Bergmann*, 938 N.W.2d at 23. Allison's prior private admonition was issued in November 2022—just months before the misconduct at issue here. And just as in this case, the admonition arose from Allison's mishandling of an appeal. There are differences, though. The prior matter arose in the very different context of a termination of parental rights proceeding. And in that prior matter, Allison's misconduct involved the miscalculation of a filing date. That was more like negligence, not the deliberate defiance at issue here. In any event, given the timing of the prior admonition and the fact that it was based on mishandling of another appeal, we consider it to be aggravating.

We turn next to Allison's remorse or lack thereof. "An attorney's lack of remorse is an aggravating factor." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Ranniger*, 981 N.W.2d 9, 19 (Iowa 2022).

As explained, Allison's sanctions statement does not include a genuine acceptance of responsibility for his actual violations. Indeed, by directing our attention toward EDMS, Allison seems to be steering us away from the real problem here: his deliberate refusal to comply with our orders.

In any event, we agree with the commission that Allison has not shown remorse for his actual violations. Before the Board and the commission, Allison maintained that because he thought his client's appeal should be dismissed, he

also thought it was *appropriate* to ignore our orders and thereby allow the appeal to be administratively dismissed. Even now, he has not retreated from that erroneous view. This is aggravating. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Tompkins*, 733 N.W.2d 661, 669 (Iowa 2007) ("Our case law makes it clear that an attorney cannot use a default notice to dismiss an appeal in lieu of the attorney's obligation to comply with our appellate rules.").

**D. The Proper Sanction Here.** As mentioned, the commission concluded that a public reprimand was the proper sanction. Likewise, in its statement on sanctions, the Board recommends a public reprimand. Meanwhile, Allison requests another private admonition.

After considering the nature of Allison's misconduct, our history of sanctions for similar misconduct, the relevant mitigating factors, and the relevant aggravating factors, we do not believe that a private admonition would adequately address Allison's deliberate defiance of our orders. Instead, we agree with the Board and the commission that a public reprimand is appropriate.

**VI. Conclusion.**

We hereby impose a public reprimand on Allison as recommended by the commission. We tax the costs of this action to Allison under Iowa Court Rule 36.24(1).

**Attorney Reprimanded.**

All justices concur. McDonald, J., files a concurring opinion.

**McDonald, Justice (concurring).**

I write separately to emphasize that Iowa Court Rules 36.21 and 36.22 are distinct rules with distinct meanings, and we should treat them accordingly. *See Iowa Sup. Ct. Att'y. Disciplinary Bd. v. Lipski*, 14 N.W.3d 751, 762 (Iowa 2024) (McDonald, J., concurring in the judgment); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Yang*, 6 N.W.3d 312, 325–26 (Iowa 2024) (McDonald, J., concurring in part and dissenting in part); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Tindal*, 949 N.W.2d 637, 646–48 (Iowa 2020) (McDonald, J., concurring in part and dissenting in part).

In this case, the grievance commission issued findings of fact, conclusions of law, and recommended sanctions. *See* Iowa Ct. R. 36.19(1). Allison then filed a statement opposing the recommended sanction, and the Board filed a statement in support of the recommended sanction. Neither party appealed the merits. Thus, we review the record de novo to "impose a lesser or greater sanction than the discipline the grievance commission recommends," *id.* r. 36.21(1), but the commission's uncontested findings and conclusions are not within the scope of our review when the attorney does not appeal those findings and conclusions pursuant to rule 36.22. Although, as the majority notes, it has been "our practice" to review the sufficiency of the evidence supporting the underlying violations, that practice is inconsistent with the text of the rules. We should either follow the rules we have adopted or amend them. I respectfully concur.